**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**FRANCIS BEAUCHAMP-PEREZ,**

**Defendant.**

**Criminal No. 11-310 (JDB)**

**MEMORANDUM OPINION AND ORDER**

The defendant was arrested on March 1, 2011 and has been in custody since that date.

He has now been indicted on one count of travel with intent to engage in illicit sexual conduct in

violation of 18 U.S.C § 2423(b). The government moved to detain the defendant without bail

pending trial. A magistrate judge denied the motion, but ordered that the defendant be held

without bail pending an order containing release conditions. On October 26, 2011, the

magistrate judge ordered that the defendant be released on 24-hour home detention at his

grandmother's home in Puerto Rico. The government then promptly [Docket Entry 28] moved to

revoke the magistrate judge's order denying pre-trial detention without bail and moved for a stay

of the magistrate judge's release order pending resolution of the revocation motion.

On October 27, 2011, this Court held a hearing regarding the motion and, following the

hearing and the defendant's request for a continuance, granted the government's motion for a stay

pending resolution of the revocation motion [Docket Entry 34]. On November 3, 2011, the

Court held an additional hearing on the revocation motion. For the reasons expressed below, the

1

Court will now grant the government's motion to revoke the magistrate judge's order denying pre-trial detention without bail. The defendant shall be held without bail.

## I. Legal Standard

A judicial officer must order the detention of a person charged with an offense if, after a detention hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense involving a minor victim under [18 U.S.C. § 2423]." Id. § 3142(e)(3).

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer must consider four factors: (1) the nature and circumstances of the offense charged, including whether the offense involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. Id. § 3142(g).

"The facts the judicial officer uses to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence." Id. § 3142(f).  On the other hand, the level of proof required to establish risk of flight is "the preponderance of the evidence." United States v. Vortis, 785 F.2d 327, 328 (D.C. Cir. 1986) (per curiam); accord United States v. Saani, 293 Fed. Appx. 1 (D.C. Cir. 2008) (unpublished decision).  Both the government and the defendant may offer evidence or proceed by proffer.  United States v. Smith, 79 F.3d 1208, 1209-1210 (D.C. Cir. 1996).

Finally, "[i]f a person is ordered released by a magistrate judge, . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release."  Id. § 3145(a).  The Court's review of the magistrate judge's determination is generally considered de novo.  See United States v. Hudspeth, 143 F. Supp. 2d 32, 35-36 (D.D.C. 2001) (citing cases); see also Def.'s Supplemental Mem. [Docket Entry 39], at 1.

## II.  Probable Cause and Presumption

In this case, the government has provided evidence of an Internet chat, telephonic communication, and text messages between the defendant and an undercover detective of the Metropolitan Police Department.  See Mot. for Emergency Stay and for Review and Appeal [Docket Entry 28], at 2-3.  The defendant has not contested that these communications included an agreement to meet in person, as well as discussion that the defendant would have sex with a twelve year-old boy.  See Def.'s Mem. [Docket Entry 37], at 2-3.  Nor has the defendant contested a communication in which the undercover detective discussed bringing the boy to a

meeting with the defendant and asked the defendant "if you were cool with him fucking you or would you rather fuck him," to which the defendant responded, "I'd probably be more comfortable fucking him." See id. at 3. Finally, the defendant has not contested that he did travel from Virginia and arrive for the meeting in the District of Columbia. Id.

The defendant has been charged with an offense involving a minor victim. On the basis of the uncontested evidence, the Court finds that there is probable cause to believe that the defendant committed this offense. Accordingly, there is a rebuttable presumption that no conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

## III.  Factor Analysis

With respect to the four factors for determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the magistrate judge stated that she "very carefully considered the full extent of the evidence offered and proferred." Tr. of Arraignment and Detention Hr'g Before the Hon. Deborah A. Robinson, Part 2 ("Tr. Part 2"), at 40. The magistrate judge indicated that she focused primarily on "the nature and circumstances of the offense charged and the weight of the evidence." Id. The magistrate judge stated that the defendant's clear intent to commit the crime was undermined by the fact that the website on which the defendant encountered the undercover detective was frequented by adult men and that users know that they can be kicked off the site for talking about having sexual encounters with minors. Id. at 41; see also Tr. of Arraignment and Detention Hr'g Before the Hon. Deborah A. Robinson, Part 1 ("Tr. Part 1"), at 23-24. The magistrate judge noted that nothing on the defendant's online profile suggested that the defendant was interested

in sex with children and that the defendant did not make inquiries regarding a child.  Tr. Part 2, at 41-42; <u>see also</u> Tr. Part 1, at 31-39, 55-56.  The magistrate judge also stated that she relied on testimony from the undercover detective that it is "possible" that the defendant could have been waiting until the child left before the defendant arrived at the scene and testimony that the defendant's intent was "ambiguous."  Tr. Part 2, at 42; <u>see also</u> Tr. Part 1 at 47.

With respect to the nature and circumstances of the offense, the charged offense is serious and involved traveling with intent to have sex with a twelve year-old minor victim.  The Court finds that this factor supports detaining the defendant; indeed, it is the basis for the presumption in favor of detention.

Regarding the weight of the evidence, in addition to the uncontested evidence, the government has provided evidence of conversations between the defendant and the undercover detective in which the defendant agrees to have sex with the minor victim.  First, the government provided the transcript of an Internet chat between the defendant and the undercover detective on the website BarebackRT.com.  Gov. Ex. 8.  The government and the defendant agree that the website is primarily used for gay men to arrange adult sexual encounters, but the government indicates that law enforcement has also identified the website as one used by pedophiles.  The defendant initiated contact on this website with the detective, who was operating under the name "DCped," and the defendant indicated he was "up for" "get[ting] together" with the detective and a "kinna young" "boi."  <u>Id.</u>

Second, the government provided records of text messages between the defendant and the detective, as well transcripts and recordings of telephone conversations between the defendant and the detective.  Gov. Ex. 2-4, 9-10.  In the first text message exchange, the detective states

that the child is twelve years-old and asks the defendant if that is too young, to which the defendant responds that he is eager to meet. Gov. Ex.1. In a subsequent telephone conversation, the defendant confirms that he is comfortable with the child's age and avoids the detective's offer to "hook-up alone." Gov. Ex. 2. In addition to the uncontested statement quoted above in which the defendant states his preference for having sex with the child, rather than having the child have sex with him, the defendant also states that he'd prefer to have sex with the child rather than with the detective. Id. In a subsequent text message exchange, the planned arrival of the child at 5pm and the defendant at 7pm is confirmed, and the defendant suggests meeting with the detective "alone first." Gov. Ex. 1. In the next telephone exchange, the detective stated that the child will need to leave at 9pm, offered that he and the defendant could "hook up later" instead, discussed the details of the planned sexual encounter involving the child and the defendant, and stated that the child is real and not "fantasy." Gov. Ex. 3. The defendant responded that he did not realize that the child needed to leave that early, that he was comfortable with having sex with the child, and that he understood the situation is not "fantasy"; he did not take the detective up on his offer to "hook up later" instead. Id. The defendant then sent a text asking if the detective still wanted to meet, after which the two had a telephone conversation in which the detective confirmed that the child was on his way to the meeting. Gov. Ex. 1; Gov. Ex. 4. The defendant arrived at the meeting in the District at approximately 7:55pm and was arrested upon meeting the detective.

The government also provided notes from an interrogation of the defendant after his arrest. According to these notes, the defendant "did not dispute that he engaged in conversations about having sex with a minor, but stated that he was just 'going along' with the story" and that "he only had intentions of having sex with the Undercover Officer." Gov. Ex. 5. The defendant

also stated that there was child pornography (both images and videos) on his computer and that, although looking at child pornography "has been a fantasy of his since he was in his early 20s," he "does not routinely look at the child pornography." Id.

Finally, the government also offered testimony of an expert in computer analysis and child pornography regarding his examination of the defendant's personal computer. The expert testified that the defendant's computer contained several images and eight videos of child pornography. The expert stated that the defendant's email account also contained evidence of three instances of distribution of child pornography. The expert testified to the details of the images the defendant allegedly distributed and the government entered the images into the record. The government also entered descriptions of the video child pornography found on the defendant's computer into the record. Gov. Ex. 14. On cross-examination, the expert stated that the defendant's computer contained approximately 100 times as many pornographic images of adults as of children, and likewise approximately 100 times as many adult pornographic videos as videos of children.

The government argues that the evidence shows defendant's clear intent to engage in sexual intercourse with a 12 year-old child after traveling from Virginia to the District. The defendant responds by arguing that the defendant's intent to have sex with the child is inconclusive based on the evidence. The defendant contends that the initial Internet chat between the defendant and the detective was ambiguous, and that the defendant's actions were consistent with fantasy, not intent to actually have sex with a minor. The defendant further argues that the defendant is not a pedophile, citing the fact that there were many fewer instances of child pornography than adult pornography on his computer.

Considering the evidence provided and the parties' arguments, the Court finds that the weight of the evidence against the defendant is fairly strong. The defendant on several occasions verbally confirmed his intent to have sex with a twelve year-old boy. The defendant agreed to specific details of the planned sexual encounter and explicitly confirmed that he was not participating in fantasy. The detective also suggested to the defendant on several occasions that the defendant might have sex with the adult detective instead of with the child, and the defendant consistently expressed an interest in having sex with the child. The defendant arrived at the scene more than an hour before the time he was told the child would leave. Additionally, the presence of a substantial amount of child pornography on the defendant's computer suggests that he had a sexual interest in children. See United States v. Lewis, 318 Fed. Appx. 1, 2 (D.C. Cir. 2009). On the other hand, the defendant did not initiate the discussion with the detective regarding having sex with a child and on one occasion suggesting meeting with the detective before meeting the child. On the whole, however, this factor favors detaining the defendant.

With respect to the defendant's history and characteristics and the nature and seriousness of the danger posed by the defendant's release, the magistrate judge's order provides for the defendant to be released under the supervision of the United States Probation Office in San Juan, Puerto Rico. The defendant was born and raised in Puerto Rico, but has been living in Minnesota since 2009. The defendant notes that he has no prior criminal record, has never failed to appear in court, and had been professionally employed prior to his arrest. The defendant also notes that he would be residing while released in his grandmother's home without minors and without access to the Internet. This location is approximately three hours from San Juan. According to the government, the probation office maintains that it could supervise the defendant with electronic monitoring and would "try" to respond to any incidents within twenty-four hours.

The defendant also submitted several letters of character reference. Furthermore, the defendant's father testified that he would accompany the defendant to and from Puerto Rico and that the defendant has never previously had legal problems. The defendant's father also testified that at least one child resides near the home where the defendant would reside and that a school is approximately one kilometer from the home.

The defendant's lack of criminal record, positive character references, and strong family ties support his assertion that he presents no danger to the community. The Court therefore finds that the defendant's history and characteristics favor his release. On the other hand, the circumstances proposed for his release suggest some possible danger to the community. The defendant would be residing near a school, several hours from the supervising office, which may not be able to respond to incidents promptly. Moreover, enforcement of the ban on computer and Internet access would be difficult.

In consideration of all of the factors, the very serious nature of the allegations, the weight of the evidence against the defendant, and the possible danger to the community collectively outweigh the defendant's positive history and characteristics. Hence, the Court finds that the defendant has not rebutted the presumption that no conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

IV. Conclusion

Accordingly, the government's motion to revoke the magistrate judge's order is **GRANTED.** The defendant shall be held without bail pending the resolution of the charges against him.

**SO ORDERED.**

_____/s/_____

JOHN D. BATES
United States District Judge

Dated:  November 9, 2011